Walter Guion, Atty. Gen., and Hubert Nicholls Wax, Dist. Atty. (Lewis , Guion, of counsel) for the State. Thomas Jones Kernan and Laycock & Beale,. for appellee.

MONROE, J. The questions here presented have been fully considered in the case of State v. McClendon (this day decided) 43 South. 417[1]; and, for the reasons assigned in that case, the judgment herein appealed from is affirmed.

(43 South. 421.)

No. 16,520.

STATE v. AIKENS et al.

(April 1, 1907.)

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Félix Brunot, Judge.

Will Aikens and Jerry Holmes were indicted for crime. Motion to quash sustained, and the state appeals. Affirmed.

Walter Guion, Atty. Gen., and Hubert Nicholls Wax, Dist. Atty. (Lewis Guion, of counsel), for the State. Edward Elliott Wall, Thomas J. Kernan, and Laycock & Beale, for appellee.

MONROE, J. The questions here presented have been fully considered in the case of State v. McClendon (this day decided) 43 South. 417[1]; and, for the reasons assigned in that case, the judgment herein appealed from is affirmed.

(43 South. 448.)

No. 16,188.

MEYERS v. RUDDOCK ORLEANS CYPRESS CO.

(March 4, 1907.    Rehearing Denied April 15, 1907.)

1. MASTER AND SERVANT—INJURY TO SERVANT—TOOL.

The implement used was a Verona lever jack. It was not out of order. It was in charge of

[1] Ante, p. 792.

the superintendent, who was not shown to have been negligent or imprudent.

2. SAME—RAISING A LOCOMOTIVE.

Similar instruments are used for lifting large bodies. The toe of the lever jack had hold of the piece of timber. It broke through the woody fiber, and the piece of timber fell on plaintiff's fingers, mashing two and wounding the other two fingers of the left hand.

3. SAME—FAILURE TO CRIB LOCOMOTIVE.

The locomotive, as raised, should have been made to rest on cribbing, following it up as it was raised by the lever jack. This does not appear to have been done, and in consequence the buffer of the locomotive fell about eight inches and struck plaintiff's hand. Plaintiff was a machinist helper, and had some experience in such work.

4. SAME — EVIDENCE INSUFFICIENT UPON WHICH TO PREDICATE A JUDGMENT.

The immediate cause of the accident was not shown, nor how the plaintiff was handling the blocks he was holding.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Henry P. Meyers against the Ruddock Orleans Cypress Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Nicholas Eugène Humphrey, for appellant. Hall & Monroe, for appellee.

BREAUX, C. J. This suit was brought by plaintiff to recover $7,216 as damages from the defendant.

Plaintiff was injured in June, 1905, while at work at his occupation as machine helper. He was raising the body of a locomotive in the yards of the defendant company. His part of the work in assisting the machinist, whose helper he was, was to place blocks under the locomotive as it was raised by a mechanical contrivance known as a "lever jack." He urged that it was not a fit machine for the work, and that it was, in consequence, the cause of the injury.

This lever was at the time operated by the superintendent, Robichaud, of the company. It was placed under the edge of the

sill of the locomotive. It had hold of about two inches; but, owing to the deficient toe hold, as plaintiff urged, the timber resting thereon was split and gave way, the body of the locomotive fell, and caught plaintiff's left hand between the locomotive sill and the block under it.

The complaint is that defendant was careless and its employés wanting in skill and were negligent in their attempt to adjust the lever jack; that they did not use the proper tool for the work; that he (plaintiff) did not know at the time that they were using a lever jack. He was under the impression that it was a screw jack.

The defendant denied liability, and averred that plaintiff was negligent and imprudent; that the jack used was a Verona jack, commonly known as a "railroad track jack," frequently used in blocking up railroad locomotives; that the weight of the locomotive itself was four tons, not an overweight for the jack used. Defendant denied that the plaintiff was confined to his home over three months, and averred that plaintiff returned to work for its company on the 9th of August, 1905, and continued to work until the 7th day of September following, doing similar work to that which he was doing when the accident happened.

As a matter of fact, plaintiff did return to work as alleged by defendant. The locomotive weighed about four tons. The utmost weight testified to by any witness was eight tons; that is, without the axle and wheels.

There were two screw jacks on the place. It was deemed best by those in charge of the locomotive work not to use a screw jack. In order to use a screw jack, it would have been necessary to cut a hole in the platform, and to dig a hole in the ground to make a foundation, and to adjust the jack in the hole. Those in charge deemed that it was not necessary; that the lever jack would answer the purpose, which was to raise the

body of the locomotive high enough above the wheels to take out the wheels and axle from under the engine.

Plaintiff and the machinist were working together jacking up the locomotive. Robichaud, the superintendent of the defendant, was in charge of the lever jack. He placed it in position, and operated it after it had been so placed.

These are about all the facts we think needful to state at this time. The case turns entirely upon facts. We will have occasion to state others while deciding the issues.

The court dismissed the suit. Plaintiff appealed.

The main ground on the part of plaintiff is: The defendant should have provided a screw jack, for the lever jack was not strong enough to raise the locomotive.

There is some difference in the opinion of the witnesses. Preponderance is entirely with the defendant. One of the witnesses thought that neither was a fit tool to be used. His only reason was that the hydraulic jack was his preference, because it was easier and quicker. He also testified that the screw jack is safer than the lever jack; but he, none the less, expressed the opinion that it was possible to safely raise the locomotive with a lever jack, and that there was no danger if the work was only done properly. It appears that, to do this work properly and without the least danger, it is only necessary to follow with proper blocking the sill as it is raised. If the jack slips, no one is exposed.

In this instance they did not place the blocks as the work was progressing. There must have been some little distance between the top of the block and the lower surface of the sill of the locomotive.

Plaintiff was not an inexperienced hand. He had been working around machinery for some time. He stated as a witness that he did not know that they were using a lever

jack, and not a screw jack. It is a little difficult to understand this. It would have required some little time to have put the screw jack in place. As he was working around the locomotive selecting blocks for its support, it is difficult to understand how it is that he did not know that they were using a lever jack. He should have known that the screw jack could not have been adjusted in the short time that the lever jack was adjusted.

The evidence amply shows that the defendant was not negligent in this respect. No one seems to have thought of any other jack before the accident occurred, except the machinist, who testified that he had said to the superintendent that he would not use this jack. The force of his testimony in this respect was entirely lost by a subsequent statement that the lever jack could be used and was sometimes used in raising locomotives.

The next complaint of plaintiff is that the toe of the lever jack did not have sufficient purchase on the sill it was supporting, that it was not properly adjusted, and, besides, that the reaching capacity of the toe was too small for the weight.

This complaint, also, does not find support in the testimony sufficient to justify us in reversing the judgment.

The machinist, Chas. Nicholls, whose helper plaintiff was, as a witness for plaintiff, stated that there was no other way of placing the jack under the locomotive than as it was placed. That it had an inch and a quarter jaw and three-quarters of an inch wide.

Nearly all of the witnesses joined in the statement that the locomotive was not too heavy for this jack.

The sill of the locomotive was a heavy piece of timber, measuring 12 by 18 and about 9 feet in length. The inference is sufficiently supported that the toe of the jack was sufficiently strong to hold up this piece of wood. It happens that it broke suddenly. The toe tore through the fiber of the wood. No one anticipated anything of the kind, or seemed to have had the least cause for apprehending an accident where it happened. The timber was a strong piece of red pine painted with tar, and had every appearance of being sufficiently strong to stand the pressure of the toe of the jack. The superintendent who operated the lever jack testified, and others. From their testimony we do not conclude that there was negligence. The judge of the district court saw and heard these witnesses. He had the opportunity of judging them at first hand. He must have come to the conclusion that there was no negligence on the part of the defendant company for which it could be held. After careful attention, we have not found that he has erred. Plaintiff himself was not as prudent as he should have been. If the block introduced in evidence was the block he was placing under the sill at the moment of the accident, it would have required the hand of a giant of old to hold up the block and place it as he did under the sill. The six-inch space at the end of this block and a lapping over of fingers was more than could be accomplished by an ordinary hand. We conclude that the accident could not have happened as the witness thinks it did. If his hand remained on the block, it was imprudent. He should have used his two hands, and not the left hand alone. There does not appear to have been any necessity of his placing his hand on the top of the block where it was hurt. If his hand remained on the block any length of time, it was an imprudent act on his part.

We have seen that he had some experience at the work at which he was employed. It does not appear that he used that experience to a sufficient extent.

We will state, before concluding, a well-known principle: That the master is bound to provide such appliances as are reasonably safe and suitable, and such as are ordinarily used.

It does not appear that the employer in

this instance failed to provide the servant with reasonably safe tools and appliances. It was one of those unavoidable accidents incident to the occupation.

Nearly all the witnesses have testified that it was a reasonably safe tool.

Negligence is a breach of legal duty. It must be shown. It will not be presumed. The burden of proof rests with the party asserting or charging negligence. Black, Law & Practice in Accident Cases.

The danger was not one which could reasonably have been apprehended by the defendant or its employés. Black, p. 219, § 76.

There is another incident connected with the case which does not entirely square with plaintiff's position. He substantially charges defendant with wanton and gross negligence, amounting to a wrong, and yet as soon as he recovered he returned and sought employment from the company he charged with having committed a wrong. It is not a very serious matter. At the same time, it has a tendency of proving that his ground of complaint, even in his own opinion, was not as great as he afterward imagined it was.

Be this as it may, we have considered the case from the different points of view presented, and have arrived at the conclusion before expressed.

This being our opinion, there remains only one alternative; that is, to affirm the judgment.

For reasons assigned, the judgment is affirmed.